UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| KING B. JENKINS,           : | |
|     Petitioner,       : | |
|                                : | |
|     v.           : | Case No. 3:19cv476(KAD) |
|                                : | |
| WARDEN ERFFE,           : | |
|     Respondent.        : | |

## **RULING ON MOTION ALTER OR AMEND JUDGMENT**

Kari A. Dooley, United States District Judge

      The petitioner, King B. Jenkins ("Jenkins") is an inmate currently confined at the Garner Correctional Institution in Newtown, Connecticut. He initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his 2000 convictions for murder and assault in the first degree. The respondent moved to dismiss the petition on the ground that it was barred by the one-year statute of limitations contained in 28 U.S.C. § 2244(d)(1). On March 28, 2020, the court granted the respondent's motion and ruled that a certificate of appealability would not issue and the Clerk entered judgment for the respondent and closed the case. Thereafter, Jenkins filed a motion to alter or amend judgment. For the reasons set forth below, the motion is denied.

**Background**

      Jenkins asserted three grounds in support of the petition for writ of habeas corpus and each ground had multiple sub-parts.[1] Pet. Writ Habeas Corpus at 15-16, 19, 23. In the first

---

[1] In its memorandum of decision on the Respondent's Motion to dismiss, the court detailed the nature and scope of the claims. The court does not do so again and presumes the parties' familiarity with the underlying

ground, Jenkins contended that the prosecutor in his criminal case, an Assistant State's Attorney withheld or suppressed "numerous pieces" of exculpatory and impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* at 15. The court refers to this ground as the *Brady* claims (A), (B) and (C). In the second ground, Jenkins contended that his attorney Thomas Conroy, was ineffective in eight ways. The court refers to this ground as the Claims against Conroy. In the third ground, Jenkins contended that the Assistant State's Attorney engaged in prosecutorial misconduct in three ways. *Id.* at 23. The court refers to this ground as the prosecutorial misconduct claims (A), (B) and (C) and notes that the prosecutorial misconduct claim (A) is essentially identical to the *Brady* claim (C).

In seeking dismissal, the respondent argued that the claims in all three grounds in the petition were barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). In response, Jenkins contended that his petition was timely under 28 U.S.C. § 2244(d)(1)(D) because he filed it within one-year of when he discovered the factual predicates of his *Brady* claims (A) and (C) and the prosecutorial misconduct claim (A). Jenkins made no argument that the *Brady* claim (B), the prosecutorial misconduct claims (B) and (C) or the Claims against Conroy were timely.[2]

Notwithstanding, the court analyzed each claim within each ground on an individual basis to determine whether it was timely filed under 28 U.S.C. § 2244(d). *See* Ruling Mot.

---

allegations.

[2]Insofar as Jenkins did not make any argument that these claims were timely and argued only that the Brady Claims (A) and (C) (which would include the identical prosecutorial misconduct claim (A)), were timely, the Court does not revisit the judgment with respect to these claims. *See, Analytical Surveys, Inc. v. Tonga Partners, L.P.,* 684 F.3d 36, 52 (2d Cir. 2012)( A party may not, however, use a motion for reconsideration to re-argue prior issues that have already been decided, present "new theories" or arguments that could have been raised earlier, seek

2

Dismiss at 10 ("The court is persuaded by the reasoning of the Circuit Courts cited and concludes that the text and structure of 28 U.S.C. § 2244(d)(1) as well as Congress's intent in enacting the AEDPA suggest that the statute of limitations should be applied on a claim-by-claim basis.").

The Court first determined that the statute of limitations as to the *Brady* claim (B), the prosecutorial misconduct claims (B) and (C) and the Claims against Conroy accrued on the date that the direct review of Jenkins' conviction and sentence became final, December 11, 2002. *See id.* at 11. Using this accrual date and calculating the periods of time that the statute of limitations was tolled due to pending petitions, the Court determined that the statute of limitations for these claims lapsed on September 24, 2013, well before the instant petition was filed. *See id.* at 12.

The Court then determined that the statute of limitations as to the *Brady* claim (C) and the prosecutorial misconduct claim (A) accrued when the predicate facts necessary to support both claims could have been discovered by Jenkins or his attorneys with the exercise of reasonable diligence - either prior to or no later than the final disposition of the first habeas petition, May 6, 2006. *See id.* at 12-15. Using this accrual date and calculating the periods of time that the statute of limitations was tolled due to pending petitions, the Court determined that the statute of limitations for these claims also lapsed on September 24, 2013, again, well before the instant petition was filed. *See id.* at 15.

As to the *Brady* claim (A), the court determined that the statute of limitations accrued when the predicate facts supporting the claim were known or could have been discovered by Jenkins or his attorney with the exercise of reasonable diligence - the date of the final disposition

---

a new hearing "on the merits, or [to] otherwise tak[e] a second bite at the apple."(internal citations omitted))

of the second state habeas petition, May 24, 2013. *See id.* at 15-18. On this claim, the limitations period ran for 280 days and then was tolled when the third habeas petition was filed. The third habeas petition was concluded on November 20, 2018 when the Connecticut Supreme Court denied the petition for certification to appeal from the decision of the Connecticut Appellate Court which affirmed the denial of the petition. The limitations period began to run again and lapsed 85 days later on February 13, 2019, twenty-seven days prior to filing the instant petition.[3] *See id.* at 25.

The court next concluded that Jenkins' had not set forth any facts to support equitable tolling on the grounds that extraordinary circumstances prevented him from filing in a timely manner or that he had exercised reasonable diligence during the entire time that he sought to have tolled as to any claim in the petition. *See id.* at 24-25. Finally, the court considered Jenkins' allegations of actual innocence and concluded that equitable tolling of the limitations period was not warranted based upon this allegation and the evidence submitted in support. *See id.* at 25-27. Accordingly, the court granted the motion to dismiss because all claims were untimely.

On April 16, 2020, Jenkins filed a motion to alter or amend judgment pursuant to Rule 59(e), Fed. R. Civ. P. On April 20, 2020, Jenkins filed a Notice of Appeal of the court's ruling

---

[3] Although Jenkins filed a motion to correct illegal sentence in October 2015 and a petition for new trial and a writ of error coram nobis in August 2016, the court concluded that these motions and petitions had not been properly filed. *See id.* at 18-24. Thus, neither the motion to correct illegal sentence, nor the petition for trial, nor the writ of error coram notice statutorily tolled the limitations period after the final disposition of the third state habeas petition. *See* 28 U.S.C. § 2244(d)(2) (limitations period under section 2244(d)(1) is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending"). In the present motion, Jenkins does not challenge these findings.

granting the motion to dismiss.  As a general matter, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982).  A notice of appeal, however, "does not divest the district court of jurisdiction to decide any of the postjudgment motions listed in Fed. R. App. P. 4(a)(4)(A), if [those motions were] timely filed." *Hodge ex rel. Skiff v. Hodge*, 269 F.3d 155, 157 n.4 (2d Cir. 2001).  Federal Rule of Appellate Procedure 4(a)(4)(A) includes motions filed under Rules of Civil Procedure 50, 52(b), 59 and 60.  *See* Fed. R. App. P 4(a)(4)(A)(i)-(vi).  A Rule 59(e) motion "must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  The instant motion to alter or amend judgment was timely filed and the court therefore has jurisdiction to rule on it under Fed. R. App. P. 4(a)(4)(A).

**Standard of Review**

A motion to alter or amend judgment under Fed. R. Civ. P. 59(e) and a motion seeking reconsideration of a judgment or order are essentially the same as "each seeks to reopen a district court's decision on the theory that the court made mistaken findings in the first instance." *City of Hartford v. Chase,* 942 F.2d 130, 133–34 (2d Cir. 1991).  Accordingly, a district court reviews a motion to alter or amend the judgment filed pursuant to Rule 59(e), Fed. R. Civ. P. under the same standard as a motion for reconsideration.  *See Kelly v. Honeywell Int'l, Inc.*, No. 3:16-CV-00543 (VLB), 2017 WL 6948927, at *2 (D. Conn. May 25, 2017) ("A motion for reconsideration filed under Local Rule 7(c) is equivalent as a practical matter to a motion for amendment of judgment under Fed. R. Civ. P. 59(e).")  (citing  *Chase*, 942 F.2d at 133); *Allstate Ins. Co. v.*

5

*Passaro–Henry,* 660 F. Supp. 2d 317, 325 (D. Conn. 2009) (courts consider motions under Rule 59(e) pursuant to same standard as that governing motions for reconsideration).

Generally, reconsideration will be granted only if the moving party can identify "controlling decisions or data that the court overlooked" and that would reasonably be expected to alter the court's decision.  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also* D. Conn. L.R. 7(c) (providing that motions for reconsideration "will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order.").  A party's identification of "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" may also constitute sufficient reasons to grant a motion for reconsideration.  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation and internal quotation marks omitted).  A party may not, however, use a motion for reconsideration to re-argue prior issues that have already been decided, present "new theories" or arguments that could have been raised earlier, seek a new hearing "on the merits, or [to] otherwise tak[e] a second bite at the apple."  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and citation omitted).

**Discussion**

Jenkins seeks reconsideration to correct "manifest errors of law and fact."  Mot. Alter or Amend, ECF No. 39, at 1.  He generally contends that the court erred in concluding that his claims were barred by the statute of limitations.  He argues that his claims are timely based on

6

new evidence that he discovered during his incarceration. Mot. at 3. As previously noted, Jenkins did not previously advance any argument that claims *other than* the *Brady* Claims (A) and (C) (which also include prosecutorial misconduct claim (A)) were timely and the Court does not address his arguments other than as relates to these claims.

Jenkins points to no evidence that the court overlooked in arriving at the accrual dates for these claims. Nor does Jenkins dispute the court's calculation of the dates on which the limitations periods lapsed, after taking into account the time when the limitations period was statutorily tolled due to the filing of his various state petitions. *See* Mot. Alter or Amend at 7-8, 10-16. Rather, Jenkins' dispute with the ruling appears to lie with the court's determination that no equitable basis existed to toll the statute of limitations.

**Equitable Tolling**

As the court previously observed, the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) may be equitably tolled, but only in extraordinary and limited circumstances. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (holding that equitable tolling applies to section 2244(d) because, *inter alia*, it is a statute of limitations and not a jurisdictional requisite). The doctrine of equitable tolling requires a petitioner to demonstrate the following two components: (1) that he or she has been pursuing his or her rights diligently and (2) that extraordinary circumstances involving an external obstacle beyond his or her control prevented him or her from filing the petition in a timely manner. *See Holland*, 560 U.S. at 649 (internal quotation marks and citation omitted). Thus, the threshold for a petitioner to establish equitable tolling is very high. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (*per curiam*).

The court must determine whether the petitioner has shown that he or she "act[ed] as diligently as reasonably could have been expected *under the circumstances*" throughout the entire period he or she seeks to have the court equitably toll. *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003) (emphasis in original). Whether the circumstances facing a petitioner were extraordinary, requires the court to consider "the severity of the obstacle [that] imped[ed] compliance with [the] limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (citations omitted). The inquiries into extraordinary circumstances and reasonable diligence are related. A petitioner must show "a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). A petitioner cannot establish the required causal relationship if, "acting with reasonable diligence," he or she could have timely filed his petition notwithstanding the extraordinary circumstances." *Id.*

**Extraordinary Circumstances**

Jenkins suggests that the "extraordinary circumstances" which prevented him from filing these claims in a timely fashion was the conduct of his attorneys during his first and second state habeas petitions. This argument fails.

"Because a lawyer is the agent of his client, the client generally 'must bear the risk of attorney error.'" *Rivas v. Fischer*, 687 F.3d 514, 538–39 (2d Cir. 2012) (quoting *Holland,* 560 U.S. 631, 650 (2010)). Thus, the Supreme Court has recognized that "a garden variety claim of excusable neglect" or "attorney negligence," such as a "miscalculation" that causes an attorney to miss a filing deadline, does not constitute an extraordinary circumstance that warrants

8

equitable tolling.  *Holland*, 560 U.S. at 651-52 (internal citations and quotation marks omitted).  Rather, extraordinary circumstances must involve "serious instances of attorney misconduct" that are that are "far more than 'garden variety' or 'excusable neglect.'"  *Id.*  at 652.  The Second Circuit has held that the attorney's conduct must be "so egregious as to amount to an effective abandonment of the attorney-client relationship."  *Rivas*, 687 F.3d at 538 (citing *Holland*, 560 U.S. at 652 ("extraordinary circumstances" found due to abandonment of attorney client relationship where counsel, over a period of several years, ignored petitioner's many inquiries, requests for information and letters emphasizing the importance of filing on time over a period).

Here, Jenkins merely rehashes his claims that his habeas lawyers were ineffective or not diligent. But he has not identified any conduct of his habeas attorneys that was "so outrageous or incompetent to render it extraordinary."  *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003).  Both attorneys represented Jenkins during pendency of the petitions, prepared for and litigated the trials held in those petitions and filed trial memoranda.  *See* Mot. Alter or Amend, Exs., at 210-15, 315-23 (copies of trial memoranda filed in state habeas petitions); Resp't's Reply Pet'r's Mem. Opp'n Mot. Dismiss, Apps. B and C, ECF Nos. 21-2 to 21-5, (Hr'g Trs. First State Habeas Petition, Docket No. NNH-CV03-0472004-S, held Sept 28-29, 2004 and Second State Habeas Petition, Docket No. TSR-CV07-4001532-S, held June 2, 2010 and August 20, 2010); Mem. Supp. Mot. Dismiss, Apps. C, F, ECF Nos. 11-3, 11-6, (State of Connecticut Judicial Branch Case Details for state habeas petitions filed in 2003 and 2007).  There no facts to suggest that conduct of either attorney constituted an abandonment of the attorney client relationship.  *See, e.g.*, *Davis v. Lempke*, 767 F. App'x 151, 152–54 (2d Cir. 2019) (Mistake by

9

attorney regarding accrual date of statute of limitations did not "amount to abandonment of the attorney-client relationship" or extraordinary circumstances because "[u]nlike cases where courts have found extraordinary circumstances . . . [attorney] communicated regularly with Davis (both before and after he made the mistake), researched the issues relevant to Davis's habeas petition, and ultimately filed that petition.") (citing *Holland*, 560 U.S. at 652–53 (determining that extraordinary circumstances likely existed where an attorney failed to research a case, failed to inform his client about crucial developments, and failed to respond to his client's many letters asking for an update). Perhaps more importantly, Jenkins offers no explanation as to how this purported lack of diligence during the previous habeas proceedings prevented him from filing a timely petition in this Court.

Notably, Jenkins raised and litigated claims of ineffective assistance of trial and first habeas counsel in his second state habeas petition and litigated claims of ineffective assistance of trial and first and second habeas counsel in this third state habeas petition and those claims were denied or dismissed. *See Jenkins v. Warden, State Prison*, No. CV074001532, 2010 WL 8271653, (Conn. Super. Ct. Aug. 20, 2010), *appeal dismissed sub nom. Jenkins v. Comm'r of Correction*, 142 Conn. App. 901, 63 A.3d 548, *cert. denied*, 308 Conn. 950, 67 A.3d 291 (2013); *Jenkins v. Warden*, No. CV144006027S, 2017 WL 4273442 (Conn. Super. Ct. Aug. 10, 2017), *aff'd sub nom. Jenkins v. Comm'r of Correction*, 185 Conn. App. 905, 193 A.3d 716, *cert. denied*, 330 Conn. 949, 196 A.3d 804 (2018). Thus, Jenkins has not demonstrated that the alleged failure of his attorneys during the first and second state habeas petitions to diligently pursue the basis for the claims at issue here constituted extraordinary circumstances that would

entitle him to equitable tolling of the limitations period as to the *Brady* claim (A) or (C) or the prosecutorial misconduct claim (A).[4]

**Actual Innocence**

Jenkins contends that he has new evidence of his actual innocence that would be sufficient to toll the statute of limitations as to his claims. He outlines this evidence on pages eighteen through twenty-four of his motion. As the court previously ruled, a credible claim of actual innocence must be supported by "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not present at trial." *Schlup v. Delo,* 513 U.S. 298, 324 (1995). The petitioner must demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006). This is a demanding standard and "permits review only in the extraordinary case." *Id.*

The evidence cited by Jenkins, including police reports and notes, the affidavit in support of the warrant for his arrest, pages from transcripts of his criminal trial and state habeas hearings, court documents filed in his criminal and habeas cases, letters and emails to and from investigators and court reporters, and pages from sentencing hearings held in Kimpson's state criminal matters, does not appear to be new. *See* Mot. Alter or Amend, Exs., at 29-37. Rather, most of the "evidence" that Jenkins describes consists of documents or transcripts that he relied on or identified in support of the claims raised in this petition or in response to or in reply to the

---

[4] Because Jenkins has not identified any extraordinary circumstance which prevented him from filing a timely petition, the Court need not reach the question of the diligence with which he pursued his claims. *See,*

11

respondent's motion to dismiss. *See* ECF Nos. 14, 16, 24, 28, 34. Much of the evidence pertains to the credibility of various witnesses, including Kimpson, the individual who identified Jenkins as the person who shot him during the criminal trial, and ways in which trial counsel was ineffective, but does not establish Jenkins' factual innocence. Nor does it constitute the type of "reliable evidence" that the Supreme Court has described as necessary to support a credible claim of actual innocence. *Schlup*, 513 U.S. at 324.

On the last page of his description of evidence, Jenkins makes reference to a recantation made by Kimpson to his attorney during a suppression hearing before his criminal trial. *See* Mot. Alter Amend at 20, 24. At the suppression hearing, Kimpson testified that Jenkins was the individual who shot him on December 21, 1998. *See* Resp't's Reply Pet'r's Mem. Opp'n Mot. Dismiss, App. A, ECF No. 21- 1, (Suppression Hr'g Tr. 27:3 – 28:25, June 5, 2000). During cross-examination, Attorney Conroy asked Kimpson whether Kimpson had stated, during a telephone conversation with Conroy, that Jenkins was not the individual who had shot him. *See id.* Kimpson denied making that statement to Attorney Conroy. *See id.* During direct and re-direct examination at trial, Kimpson testified that Jenkins was the individual who had shot him. *See* App. A, ECF No. 21-1, (Trial Tr. 236:5 – 238-27; 239:26 – 242:23; 243:19-21; 265:24 – 266:8, June 9, 2000). Jenkins has not presented reliable evidence that Kimpson recanted his statement to the police regarding the identity of the shooter during his testimony at the suppression hearing held before trial.

Jenkins also refers to alleged recantations made by Kimpson to the attorney who represented him during his first habeas petition and to the attorney who represented him during

---

*Holland v. Florida,* 560 U.S. 631, 649 (2010).     12

his second habeas petition. *See* Mot. Alter Amend at 24. Those statements were also purportedly made over the telephone. Both attorneys testified at Jenkin's third state habeas hearing. Attorney Coffin, who represented Jenkins in his first state habeas filed in 2003, testified that she and her investigator had spoken to Kimpson on the phone several times and that she recalled that Kimpson may have been recanting some of his trial testimony because he had become uncertain about who had shot him. *See* App. D, ECF No. 21- 6, (Third Habeas Trial Tr. 61:7 – 62:11, Feb. 7, 2017). Attorney Coffin and her investigator were unable to locate or interview Kimpson in person because he was out of state and they did not subpoena him to testify at the first habeas hearing. *See id.*

Attorney Koch, who represented Jenkins at this second state habeas filed in 2007, testified that his investigators had spoken to someone who purported to be either George Kimpson or Jamal May, but they were unable to locate or subpoena him for the hearing because they believed he resided outside of Connecticut. *See id.* (Third Habeas Trial Tr. 22:5-6; 22:22 – 23:5). Attorney Koch did not testify that Kimpson had recanted his trial testimony that Jenkins shot him when speaking with his investigators. *See id.*

Thus, neither Attorney Coffin, nor Attorney Koch was able to meet with Kimpson in person, secure a written affidavit or declaration from Kimpson or subpoena him to testify at either state habeas hearing in order to corroborate his alleged statements that he sought to recant his testimony regarding the identity of the person who shot him on December 21, 1998. Thus, Jenkins has not presented reliable evidence in support of any recantation of trial testimony by Kimpson. *See, e.g.*, *Conception v. Brown*, 794 F. Supp. 2d 416, 422–23 (W.D.N.Y. 2011)

13

(concluding petitioner had not pursued witness's alleged recantation with due diligence and that witness's recantation was "not "reliable evidence" of Concepcion's innocence as contemplated by *Schlup*. Tellingly, it first surfaced after [witness] had received a modification to his prison sentence following a successful C.P.L. § 440.20 motion and had served out his prison time.  As the prosecution stated, it is suspicious that Black's "recantation" came at a time when he had already received the benefit from testifying against Tirado and Concepcion and had nothing to lose.")

Because Jenkins has not identified any facts or law that the court overlooked in determining that the claims in each ground in the habeas petition were barred by the statute of limitations and in determining that there was no basis on which to toll the limitations period, the motion to alter or amend judgment is denied.

**Conclusion**

The Motion to Alter or Amend Judgment, [**ECF No. 39**], is **DENIED**.  The court concludes that jurists of reason would find it undebatable that no basis existed to equitably toll the statute of limitations or to statutorily toll the limitations during the pendency of the motion to correct illegal sentence, petition for new trial and writ of error coram nobis in state court as to any claim in the petition and therefore that Jenkins had failed to timely file this action.  Thus, a certificate of appealability will not issue.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (holding that, when the district court denies a habeas petition on procedural grounds, a certificate of appealability should issue if jurists of reason would find debatable the correctness of the district court's ruling).

SO ORDERED at Bridgeport, Connecticut this 3rd day of June 2020.

                                              ____/s/_____
                                              Kari A. Dooley
                                              United States District Judge